A03A1702. LAND et al. v. STATE OF GEORGIA.
(595 SE2d 540)

JOHNSON, Presiding Judge.

The state filed a petition to condemn $4,548 and a pistol that law enforcement officers had found with methamphetamine in the apartment of Wendell Nicholson. Nicholson and his girlfriend, Lisa Land, who was in the apartment when the items were found and has laid claim to some of the money, moved to suppress evidence found in the apartment, arguing that the officers had unlawfully entered the apartment without a search warrant. The trial court denied their motion to suppress, finding that the warrantless entry was justified by exigent circumstances, and the court granted the state's petition to condemn the money and the weapon. Land and Nicholson appeal.

1. Land and Nicholson claim that the trial court's denial of their motion to suppress must be reversed because the court erred in finding that exigent circumstances justified the officers' warrantless entry into their apartment. The claim is without merit.

Three principles guide our review of the trial court's ruling on the motion to suppress evidence.

First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to sup-

port them. Second, the trial court's decision with regard to the questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[1]

Construed in favor of the trial court's findings and judgment, the evidence in the instant case shows that a deputy sheriff working with a narcotics unit received information from a confidential informant that Nicholson was supplying methamphetamine to his aunt, Barbara Long, and that he normally delivered the drugs to her between midnight and 1:00 a.m. Based on that information, the deputy sheriff and other narcotics officers placed Nicholson's apartment under surveillance at 11:00 p.m. on July 17, 2002.

As the officers were watching the apartment, they saw Barbara Long and her husband, Robert Long, arrive at the apartment complex in a Jeep Wrangler. Barbara Long, whom the officers knew from prior drug cases, went into Nicholson's apartment while Robert Long waited in the Jeep. Barbara Long was in the apartment for approximately 30 minutes, and then returned to the vehicle. She and her husband then began to drive away from the complex.

Two officers followed the Longs while other officers maintained the surveillance on the apartment. The officers tailing the Longs saw them stop at the complex entrance, where a man approached their vehicle, spoke with them for less than a minute and stuck his hand in through the driver's side window. When the Longs finally left the complex, the officers activated the blue lights and siren on their car to signal for them to stop their Jeep.

The Longs continued driving for another mile before stopping. The officers approached the Jeep and discovered that Barbara Long was sweating profusely, seemed to be choking on something and was bleeding from her mouth. Within minutes of the stop, Robert Long went into convulsions and fell to the ground. The officers called for an ambulance, and Robert Long was transported to the hospital.

Meanwhile, back at the apartment complex parking lot, a sheriff's drug dog sniffed around the exterior of Nicholson's pickup truck, and alerted on the truck's rear bed. Nicholson then came out of his apartment with garbage bags. When the officers approached him, he denied being Nicholson and gave a false name. The officers arrested him for giving the false name, and then went to his apartment to make contact with Land, who Nicholson said was inside the apartment.

---

[1] (Citation and punctuation omitted.) *Binkley v. State*, 255 Ga. App. 313, 314 (566 SE2d 31) (2002).

An officer knocked on the door several times and announced who he was. He heard Land walk toward the door and he heard the door handle move, but she did not open the door. Nicholson told the officers that Land had a cellular telephone with her and he gave them the phone number. They called the number, but Land did not answer it. The officer at the door noticed a video camera hidden in a potted plant sitting on the floor by the door. He had seen such cameras used by people involved in illegal narcotics to transmit a picture of the outside of a residence to a television inside the residence.

The officer contacted a lieutenant who was at the scene of the Longs' traffic stop, and informed him about the events at the apartment. The lieutenant told the officer to force entry into the apartment in order to prevent Land from destroying any evidence. Officers then entered the apartment, where they saw that the outside video camera was indeed transmitting a picture of the front door area to a television in the living room. They also saw glass pipes used to smoke methamphetamine sitting on a coffee table, and they found Land in the bedroom.

Having secured the scene, the officers then obtained a search warrant for the apartment. Upon executing the search warrant, they found a briefcase containing the money and a large amount of methamphetamine in the living room. They found the handgun in a bedroom closet.

An officer may enter an apartment without a warrant if there are exigent circumstances which require the officer to act immediately.[2] A classic example of exigent circumstances is the likelihood that contraband is in danger of immediate destruction.[3] In reviewing police actions, a court must consider the actions from the standpoint of a hypothetical reasonable officer acting in a quickly developing situation.[4]

In the instant case, the trial court was authorized to find from the evidence that a reasonable officer would have believed that there was a likelihood that Land, who knew the officers were at the apartment door but refused to respond to the officers' knocking, would destroy any methamphetamine or other evidence in the apartment.[5] Given the officers' reasonable belief of exigent circumstances, they were justified in making a warrantless entry for the purpose of securing the apartment until a search warrant could be obtained. The trial

---

[2] *State v. David*, 269 Ga. 533, 535-536 (2) (501 SE2d 494) (1998); *Binkley*, supra.

[3] *David*, supra at 536 (2).

[4] *State v. Brannan*, 222 Ga. App. 372, 373 (1) (474 SE2d 267) (1996).

[5] Compare *Welchel v. State*, 255 Ga. App. 556, 559 (565 SE2d 870) (2002) (no threat that drugs would be destroyed where there was no evidence that defendant was aware of police presence).

court therefore did not err in denying Nicholson and Land's motion to suppress.

2. Nicholson and Land argue that the trial court improperly drew inferences against them based on their invocation of the right against self-incrimination. This issue has been decided adversely to Nicholson and Land. This court has held that in a civil forfeiture action, as opposed to a criminal case, inferences unfavorable to the defendant can be drawn from the defendant's invocation of the right against self-incrimination.[6] Accordingly, the trial court in the instant civil forfeiture action did not err in drawing inferences adverse to Nicholson and Land based on their invocation of the right not to incriminate themselves.

*Judgment affirmed. Eldridge and Mikell, JJ., concur.*

DECIDED FEBRUARY 12, 2004 —
RECONSIDERATION DENIED FEBRUARY 26, 2004 ▆▆▆▆▆▆▆▆

*J. Alfred Johnson*, for appellants.

*Patrick H. Head, District Attorney, Samuel W. Lengen, Amelia G. Pray, Assistant District Attorneys*, for appellee.

